James **BENJAMIN** et al., Plaintiffs,

v.

Benjamin J. **MALCOLM**, Commissioner of Correction of the City of New York et al., Defendants.

No. 75 Civ. 3073.

United States District Court, S. D. New York.

Nov. 19, 1980.

The Legal Aid Society, New York City, for plaintiffs; Michael Mushlin, New York City, of counsel.

Allen G. Schwartz, Corp. Counsel, New York City, for defendants; Leonard Koerner, Asst. Corp. Counsel, New York City, of counsel.

Robert Abrams, Atty. Gen., New York City, for Hon. Hugh L. Carey and Thomas Coughlin; Paul E. Milbauer, Asst. Atty. Gen., New York City, of counsel.

LASKER, District Judge.

The defendants (collectively the City) move under Rule 19, Fed.R.Civ.Proc., to join the Governor of the State of New York and the State Commissioner of Correctional Services as defendants. It is the City's claim that in the absence of the Governor and the Commissioner as party defendants, the court cannot grant complete relief among those already parties.[1]

In particular, the City argues that it cannot meet its obligation to reduce and control population at the House of Detention for Men on Rikers Island, as required by various orders of this court, unless the number of prisoners which the State of New York houses at HDM is limited or controlled by the court. At the time that this motion was filed (August 21, 1980), the large number of State prisoners being housed at HDM, (either persons being processed for permanent incarceration in State facilities or alleged State parole violators) beyond question created so acute a problem for the City as to render it nearly impossible for the City to meet the court's orders. This state of affairs has come into existence fairly suddenly over the recent past. For example, in 1977, the average daily number of State readies at HDM totalled 189. In contrast, during the first five months of this year the average daily number rose to 460 and on July 17, 1980 reached 657, in addition to 140 alleged parole violators. When it is considered that the most recent order of this court required that the population at HDM be limited to 1200, it is obvious that the impact of the presence of State prisoners in such large numbers constituted an insurmountable roadblock to the fulfillment of the City's obligations. There is no doubt, therefore, that the City's motion under Rule 19 was appropriately brought. Nor is there any question that the Governor and State Commissioner are subject to service of process, that their joining is "feasible" and will not deprive the court of jurisdiction of subject matter of the action (all prerequisites for the application of Rule 19 joinder). In sum, as the facts stood at the time the motion was made, the City stated

---

1. Rule 19 states in relevant part:
   "Rule 19. Joinder of persons needed for just adjudication.
   (a) PERSONS TO BE JOINED
   If feasible ... a person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action, shall be joined in the action if 1) in his absence complete relief cannot be accorded among those already parties."

a compelling case for joining the Governor and State Correction Commissioner.

In making this statement we do not ignore the points of opposition asserted by the State in its answer to the motion: that the City is responsible for the population levels at HDM and has the ability to remedy the problem; that the joinder of the State parties at this stage of the proceedings would be unduly prejudicial and might violate due process of law and finally, that the court should abstain because determination of the motion might require interpretation of a state statute which has not been construed by the Courts of New York.

We find these arguments unpersuasive. It is true that, as indicated in prior opinions of this court, the City is obligated to provide minimally acceptable population levels and that the City has extra spaces within the buildings of the HDM complex (other than HDM) which can be refurbished so as physically to accommodate the number of inmates by which the HDM population must be reduced. However, it does not follow that complete relief can be granted to the parties in the absence of the State officers, since without some assurance as to the number of State prisoners who may be housed at HDM, the City cannot exercise control of its own compliance with this court's orders.

Nor do we find merit in the State's argument that the joinder of the Governor and the Commissioner at this stage of the proceedings would be unduly prejudicial or violate due process of law. The matters which have already been decided by the court have not involved the State in any way and, if joined, the State would be fully represented before the court in any future determination which would affect its interests.

Finally, we disagree with the State that the court should abstain from deciding the motion because determining it might require interpretation of the State's obligation to house prisoners under § 430.30 of the Criminal Procedure Law of New York. The sole item of statutory construction which that interpretation might require would be to determine what the word "forthwith" means in the statute. This is not the kind of question that requires the specialized expertise of the State courts.

Accordingly, as we have indicated above, had the facts not changed since the bringing of this motion, it would have been granted. Yet the very filing of the motion appears to have spurred constructive responses on the part of the Governor and the Commissioner with the result that as of November 3rd, there were only 32 State "readies" in the New York City Correctional System of whom only 13 were housed at HDM. Moreover, since the end of September, 1980, no State ready in New York City custody has had to wait for acceptance at Ossining Correctional Facility or Elmira Correctional Facility (to which many or all State readies are sent from HDM). (Stipulation of the parties dated November 5, 1980). Furthermore, by affidavits dated September 26th, October 9th and October 22nd filed in this case, the State Commissioner has represented to the court that he will use his best efforts to assure that on any given day the number of State–ready inmates housed at HDM for more than 65 days does not exceed 100 and that he is "attempting to arrive at a reasonable balance between the assurances desired by the City and what I think I can realistically expect to perform in light of this agency's own inmate capacity."

The City does not consider these assurances adequate to permit it to plan for future operations, and we understand its reasons for that view. Nevertheless, the fact that such a small number of State readies is now being held at HDM together with the State Commissioner's commitment to do everything possible to control the future number of State readies held at HDM, prompt us to conclude that joinder of the Governor and State Commissioner at this time is not necessary. We stress the phrase "at this time" because although the motion is denied, it is denied without prejudice to renewal by the City in the event that the number of State readies held at HDM or any pattern of increase in such numbers appears to threaten the City's abil-

**336**

ity to comply with the orders of the court and thereby threatens the ability of the court to grant full relief to the parties.

In sum, we believe that if the problem can be solved by the voluntary cooperation of the State, there is an advantage to such a disposition. It will obviate the necessity of judicial intrusion into State governmental affairs and avoid the additional complication of this litigation, which might occur if the State were to be a full participant in all future proceedings. Nevertheless, if the problem cannot be solved on the basis of the State's cooperation, the court stands ready to grant the necessary relief.

The motion is denied without prejudice.

It is so ordered.